948 A.2d 712 (2008)
400 N.J. Super. 572
Deborah K. POOL, Plaintiff-Respondent,
v.
MORRISTOWN MEMORIAL HOSPITAL, a domestic non-profit corporation; Richard D. Shih, M.D.; Michael A. Gould, M.D.; Carey Dolgin, M.D.; and William B. Felegi, D.O., Defendants, and
Workers' Compensation Security Fund (administered through Hartford SRS), Appellant.
Docket No. A-6183-06T2
Superior Court of New Jersey, Appellate Division.
Argued April 28, 2008.
Decided June 16, 2008.
Eric E. Fingerman, argued the cause for appellant (Freeman, Barton, Huber & Sacks, attorneys, Haddonfield; William P. Freeman, on the brief).
James S. Lynch, argued the cause for respondent (Lynch Law Firm, P.C., attorneys; Arthur V. Lynch and Russell H. Rein, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and C.S. FISHER.
The opinion of the court was delivered by
FISHER, J.A.D.
Plaintiff Deborah Pool, a radiological technician, suffered a knee injury at her workplace. She was initially diagnosed at Morristown Memorial Hospital (the hospital) as having a minor knee sprain and discharged with a prescription for pain medication. A few days later, she returned to the hospital's emergency room in extreme pain. This time she was diagnosed with a serious infection, which tragically resulted in the amputation of both legs, her right arm, and four fingers of her left hand.
Plaintiff filed a workers' compensation claim, which resulted in an award of $400,000 in permanent and total disability with an expectation of additional benefits for the rest of her life. Plaintiff later filed this medical malpractice action against the hospital and others. Plaintiff and the hospital settled for $125,000; the workers' compensation statutory lien, N.J.S.A. 34:15-10, held by appellant Workers' Compensation Security Fund (the fund), attached to that recovery.
Plaintiff went to trial against the remaining defendants. Before the jury could render its verdict, plaintiff and defendant Richard D. Shih entered into what they have referred to as a "verdict risk limiting" agreement, which guaranteed  regardless of the jury's verdict  that plaintiff would receive no less than *714 $100,000 and no more than $3,500,000. That is, if the verdict was that plaintiff should receive nothing or less than $100,000, Shih was bound to pay plaintiff $100,000; if the verdict was in excess of $3,500,000, plaintiff would receive only $3,500,000; and if the verdict fell between $100,000 and $3,500,000, the amount of the verdict would define the amount due plaintiff. The jury rendered a "no cause" verdict, and, based on her agreement with defendant Shih, plaintiff received $100,000.
Plaintiff thereafter filed a motion in this action, seeking a declaration that the fund's statutory lien did not attach to the $100,000 payment. The fund opposed the motion.
There was no genuine factual dispute about the nature and terms of the "verdict risk limiting" agreement. Such an agreement, also commonly known as a "high/low" agreement, fixes the parties' obligations pending a determination of the defendant's monetary obligation through the rendering of the jury's otherwise irrelevant verdict.[1] The discrete issue presented on appeal is whether defendant Shih's $100,000 payment was subject to the fund's statutory lien, which attaches by law to any "sum in release or in judgment on account of [a third person's] liability to" the employee. N.J.S.A. 34:15-40. The trial judge concluded that the payment did not meet this statutory definition and granted plaintiff's motion. We disagree and reverse.
"With respect to work-related injuries, the rights and duties of an employee and employer, as well as those of the employer and a third-party tortfeasor, are governed by the Workers' Compensation Act, N.J.S.A. 34:15-1 to -127." Ramos v. Browning Ferris Indus., Inc., 103 N.J. 177, 183, 510 A.2d 1152 (1986). As the Court has explained, an earlier statutory scheme permitted an injured employee to recover not only workers' compensation benefits but also any payments received from third-party tortfeasors. In this manner, employees were able at times to obtain double recoveries. Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 596-97, 667 A.2d 670 (1995). Finding such double recoveries inequitable, the Legislature enacted N.J.S.A. 34:15-40, which, with some modifications since its original adoption in 1913, creates a lien in favor of the employer that attaches to the employee's recovery against other tortfeasors. See also 6 Arthur Larson, Larson's Workers' Compensation Law § 110.03 (2007) (observing that "[t]he policy of avoiding double recovery is a strong one, and has on occasion been invoked to override a result that might be thought required by a literal or technical interpretation of statutes"). As a result, although the legislative scheme permits an employee to pursue a claim for damages against an alleged tortfeasor, any recovery obtained, not in excess of the amount of the lien, is encumbered by the employer's statutory lien. See Errickson v. Supermarkets Gen. Corp., 246 N.J.Super. 457, 463, 587 A.2d 1322 (App.Div.1991).
With this understanding of the statute's history as a backdrop, we focus on whether the fund's lien attached to the payment *715 plaintiff received from defendant Shih. That is, we must determine whether this $100,000 payment is what is referred to in N.J.S.A. 34:15-40 as a "sum in release or in judgment on account of [a third person's] liability to" plaintiff.
Our analysis could begin and end with the observation that plaintiff executed and delivered a general release of all her past, present and future claims against defendant Shih as the verdict risk limiting agreement apparently required in order to obtain the $100,000 payment. No parsing of the language of the statute, in light of those circumstances, would suggest anything other than that this payment was a "sum in release . . . on account of [a third person's] liability." Ibid. (emphasis added).
But, we also conclude that it is not the mere delivery of a release in exchange for the payment, but the nature of the settlement agreement itself, that warrants the attachment of the statutory lien to the payment. The general language of N.J.S.A. 34:15-40 clearly evinces the Legislature's intent to broadly expand the type of payments to which the lien will attach. No matter how atypical or novel the nature of a settlement agreement, the lien will attach to a payment received by an injured employee that is derivative of the employee's demand, claim or suit against a third party tortfeasor. See Grijalva v. Ariz. State Comp. Fund, 185 Ariz. 74, 912 P.2d 1303, 1306 (1996). Such is in keeping with our courts' expansive view of the statutory lien. By way of illustration, we note that it has been held that the statutory lien attaches to a recovery or settlement of a legal malpractice action based on an attorney's failure to pursue a claim against a third party tortfeasor. Frazier, supra, 142 N.J. at 601-02, 667 A.2d 670; Johns-Manville Prods. Corp. v. Dronebarger, 211 N.J.Super. 520, 525-26, 511 A.2d 1304 (Law Div.1986).
In short, the lien attaches regardless of the merit of the third-party claim. As a result, it is of no moment that the jury rendered a verdict favorable to defendant Shih in determining whether the payment he later made was "on account of" his liability to plaintiff. N.J.S.A. 34:15-40. The phrase "on account of . . . liability" does not limit itself to those payments made when a third party tortfeasor is actually found liable. The question to be determined is whether the agreement to make a payment was made in contemplation of and while the alleged tortfeasor was in the course of responding to or defending against a claim brought by the employee. Accordingly, the lien attaches as well to an alleged tortfeasor's promise to pay in order to avoid the consequences of a verdict yet to be delivered, as here.
When Shih agreed to make a payment to plaintiff this case was still active. Shih's $100,000 payment to plaintiff was not a gift; it was a settlement. It was offered and accepted as the means for resolving the parties' differences, subject only to the rendering of a jury verdict for the sole purpose of filling in the agreement's gaps by defining the amount Shih had agreed to pay. This constituted a settlement of the type encompassed by N.J.S.A. 34:15-40 because it was generated by, and made in contemplation of, plaintiff's suit against Shih and was the consideration she agreed to accept in order to resolve that litigation. As a result, we conclude in this novel circumstance, a conclusion also assumed by a court of a sister state, Martino v. Workers' Comp. Appeal Bd., 813 A.2d 945, 947-49 (Pa.Commw.Ct.2002), appeal denied, 573 Pa. 706, 827 A.2d 431 (2003)[2], *716 that the payment to the employee of the "low" defined by a high/low agreement, which agreement preceded a decision or verdict in favor of an alleged tortfeasor, is subject to the employer's statutory lien.
Reversed and remanded for the entry of an order enforcing the fund's statutory lien.
NOTES
[1] At oral argument, plaintiff argued there was insufficient detail in the record on appeal by which the terms and meaning of the verdict risk limiting agreement could be ascertained. This contention was never raised in the trial court nor was such an argument contained in plaintiff's appellate brief. Indeed, contrary to plaintiff's contentions at oral argument about the alleged inadequacies in the record, the nature of the agreement was spelled out in plaintiff's motion in the trial court, and the fund expressly indicated its agreement with plaintiff's description. Accordingly, we resolve the issues on appeal by reference to plaintiff's own description of the agreement in the trial court.
[2] Martino assumed the applicability of the employer's right of subrogation to the payment of the "low" required by a high/low agreement, which preceded an arbitrator's decision in favor of the defendant. The only controversy in Martino was whether the employer's rights extended to the injured party's spouse's alleged share of the "low", based on the spouse's loss of consortium claim. The divided court held that the employer's rights extended to the entirety of the unallocated "low." 813 A.2d at 948.