NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-6278-11T4

KELLY GREENE,

     Petitioner-Respondent,

v.

AIG CASUALTY COMPANY,

     Respondent-Appellant.

_____

> APPROVED FOR PUBLICATION
>
> **October 16, 2013**
>
> **APPELLATE DIVISION**

Argued February 27, 2013 – Decided October 16, 2013

Before Judges Grall, Koblitz and Accurso.

On appeal from the Department of Labor,
Division of Workers' Compensation,
Claim Petition No. 2009-24085.

John H. Geaney argued the cause for
appellant (Capehart & Scatchard, P.A.,
attorneys; Mr. Geaney and Ian G. Zolty,
on the briefs).

John J. Jasieniecki argued the cause for
respondent (Green, Jasieniecki & Riordan,
LLC, attorneys; Mr. Jasieniecki, of counsel
and on the brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The question presented by this appeal is whether respondent

AIG Casualty Company (AIG), which paid workers' compensation

benefits to petitioner Kelly Greene, is entitled to a lien against her settlement with a third-party tortfeasor pursuant to Section 40 of the Workers' Compensation Act, N.J.S.A. 34:15-40, even though her injury was ultimately noncompensable. The workers' compensation judge determined that Section 40 is inapplicable to a claim deemed not to be compensable. We disagree and reverse.

There are very few facts in the record. Petitioner was employed by AIG as an accountant analyst. She slipped in the lobby of the building where she worked, on a floor wet with rain, and sustained an injury to her knee. Petitioner immediately reported the accident to AIG. AIG did not own the building where petitioner worked but only leased a portion of the premises. It initially denied the claim and advised petitioner to submit any bills to her health insurance carrier.[1] Nevertheless, and for reasons unclear on the record, within days of that letter AIG authorized treatment without prejudice pursuant to N.J.S.A. 34:15-15 (Section 15).

Ten weeks after the accident, the subrogation agent for AIG's workers' compensation carrier wrote to petitioner

---

[1] The letter to petitioner was sent by Chartis. In its reply brief, AIG advises that "NUFIC of Pittsburgh [AIG's workers' compensation carrier], AIG and Chartis are all the same company, which [petitioner] was aware of as an employee of AIG."

asserting a lien against any financial recovery she might obtain from any third party. Petitioner subsequently filed a claim petition in the Division of Workers' Compensation against AIG and a third-party tort action.[2] AIG filed an answer to the claim petition. In response to petitioner's assertion that her injury occurred in the course of her employment, AIG answered "UI," meaning the matter was "under investigation." AIG continued to pay medical and temporary disability benefits to petitioner pursuant to Section 15.

AIG subsequently filed an amended answer denying that petitioner's injury had occurred in the course of her employment and a motion to dismiss petitioner's claim petition. Petitioner opposed the motion and filed two additional motions of her own, one to compel AIG to provide additional medical treatment,[3] and a second, months later, to bar any claim by AIG under Section 40.

In the motion made pursuant to Section 40, counsel expressed petitioner's willingness to concede that the claim was not compensable in exchange for a waiver of AIG's statutory subrogation rights as against her third-party settlement.

---

[2] The tort action was presumably against the owner of the building. There is no information about this suit in the record. In its brief to this court, AIG asserts without contradiction that the suit was settled for $225,000.

[3] According to the parties, this motion was later abandoned.

Counsel explained that "[i]t is Petitioner's position that either the Workers' Compensation Claim Statute applies in its entirety or if the accident is not compensable, no credit under N.J.S.A. 34:15-40 is due. As such, Respondent cannot pick and choose which provisions of N.J.S.A. 34:15-1 et seq. appl[y]."

AIG opposed the motion, noting that its motion to dismiss had not been heard and was still pending. AIG asserted that it provided petitioner medical treatment and disability payments without prejudice pursuant to the express terms of Section 15, and thus was entitled to its lien pursuant to Section 40. Specifically, AIG contended that it paid $94,841.52 in medical benefits and $23,963.02 in indemnity for a total of $118,804.54, and was thus owed $79,203.03, two-thirds of the benefits paid, from petitioner's recovery of $225,000. Counsel contended that "[n]owhere does it state in [Section 40] that it is applicable only when there is a compensable lien." AIG claimed that petitioner's construction of the statute would allow her a "double recovery" not permitted under workers' compensation laws.

After hearing argument, the workers' compensation judge granted petitioner's motion. Characterizing the issue as whether "AIG is entitled to reimbursement from a third party recovery under [Section] 40 without accepting the claim as

compensable," the judge wrote that AIG "wishes to escape the obligations of a workers' compensable judgment for additional money for permanency and that allows petitioner to reopen the matter for further treatment or additional disability and requires it to shoulder a greater part of the expenses of medical examinations and attorney's fees." The judge concluded:

> Section 40 is a part of the Workers' Compensation statutes. It is applicable in situations involving workers' compensation claims and cannot be taken out of context to apply generally. If the claim is determined not to be compensable, the section is inapplicable. If it is compensable, the section applies. Either we try the matter of compensability or respondent relinquishes its lien.
>
> Respondent asserts that the section denies a double recovery. One could argue that the outcome it desires would result in something of a double recovery for it, rather than for the injured worker.

The judge subsequently signed an order of dismissal on consent of the parties, which included a provision that the funds recovered in the third-party action be held in escrow for forty-five days in anticipation of an appeal to this court.

In a supplemental letter issued pursuant to R. 2:5-1(b), the judge noted that

> [a]t the time of the accident, petitioner was covered by both health care benefits and workers' compensation insurance. Whether the matter was compensable or not, she had medical coverage and would not have had to

> bear the brunt of the expenses.  If there
> remains an ancillary issue regarding such
> coverage, that carrier should have been
> joined in that action.  The Division of
> Workers' Compensation is a statutory court
> limited to workers' compensation injuries
> and does not have authority to modify a
> judgment of Superior Court.

The judge further stated that once the parties agreed to dismiss the workers' compensation claim, she was without "jurisdiction to order anything further."[4]

Our review of a judge of compensation's conclusions of law is de novo.  Sentinel Ins. Co. v. Earthworks Landscape Constr., L.L.C., 421 N.J. Super. 480, 486 (App. Div. 2011).  In determining the meaning of a statute, as we are required to do here, the first step is always to consider its plain language.  Oberhand v. Dir., Div. of Taxation, 193 N.J. 558, 568 (2008).  We construe that language in light of the entire statute and the overall statutory scheme.  Cnty. of Bergen Emp. Benefit Plan v. Horizon Blue Cross Blue Shield of N.J., 412 N.J. Super. 126, 132 (App. Div. 2010).  "When the language in a statute 'is clear and

---

[4] To the extent the judge was of the view that petitioner's concession that her claim was not compensable deprived the court of jurisdiction to resolve the dispute over the Section 40 lien, we disagree.  See N.J. Mfrs. Ins. Co. v. Blau, 194 N.J. Super. 27, 31 (App. Div. 1984) (holding that the original exclusive jurisdiction of the Workers' Compensation Division over all claims for workers' compensation benefits, includes a claim by a compensation carrier to recover benefits allegedly improperly received).

unambiguous, and susceptible to only one interpretation,' we presume the Legislature meant what it said and that the plain meaning governs." Ibid. (quoting Burnett v. Cnty. of Bergen, 198 N.J. 408, 421 (2009)).

Section 15 of the Workers' Compensation Act, N.J.S.A. 34:15-1 to -142 (the Act), requires that an employer "shall furnish to the injured worker such medical, surgical and other treatment, and hospital service as shall be necessary to cure and relieve the worker of the effects of the injury" but that "[t]he mere furnishing of medical treatment or the payment thereof by the employer shall not be construed to be an admission of liability." N.J.S.A. 34:15-15. Section 40 of the Act addresses situations in which a third person is liable to the employee for an injury. While permitting an injured worker to both collect compensation benefits and pursue a third-party tortfeasor, Section 40 requires an employee to reimburse the employer from the proceeds of any recovery. N.J.S.A. 34:15-40; Pool v. Morristown Mem'l Hosp., 400 N.J. Super. 572, 575-76 (App. Div. 2008). In situations, as here, in which the recovery exceeds payments made by the employer, the statute provides:

> If the sum recovered by the employee or his dependents from the third person or his insurance carrier is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall

be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fee as hereinafter defined.

[N.J.S.A. 34:15-40b.]

It has long been understood that the clear intent of Section 40, which was not a part of the Act's original provisions in 1911, is to prevent an injured employee from recovering and retaining workers' compensation payments, while at the same time recovering and retaining the full damages resulting from a third-party tort suit. See United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157, 163-65 (1950) (noting the purpose of the "amendatory legislation" was to retain for the injured employee the benefit of a potentially greater recovery from a third-party tortfeasor than that allowed under the Act, while at the same time obviating "the evil of the old law" by providing for the reimbursement of the employer or its insurance carrier out of the proceeds of any third-party recovery).

Contrary to petitioner's argument, nothing in either Section 15 or Section 40 conditions reimbursement of the claim from a third-party settlement on whether the benefits the

employer paid were owed in the first place.[5]  Section 15 expressly provides that any payments the employer makes are without prejudice to a defense of noncompensability, and Section 40b allows the employer reimbursement from the third-party recovery if the sum recovered by the employee is "equivalent to or greater than the liability of the employer."  N.J.S.A. 34:15-40b.[6]  Here, as petitioner concedes that AIG has no liability under the premises rule,[7] the sum she recovered in settlement of her third-party claim must be greater than AIG's liability,

_____

[5] Petitioner points to the first line of Section 40 which provides that "[w]here a third person is liable to the employee or his dependents for an injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein," N.J.S.A. 34:15-40 (emphasis added), as evidencing the Legislature's intent "that the liability of a third-party is not triggered absent an employee's right to receive benefits under N.J.S.A. 34:15-1 et seq." Petitioner's reading would bar her from receiving payments under the Act and from suing a third-party tortfeasor for negligence, a nonsensical result utterly at odds with the statute's express terms.

[6] A recent amendment to N.J.S.A. 34:15-15 makes clear that AIG could not recover directly from petitioner any fees it paid for treatments or medical services.  See L. 2012, c. 67, § 1.  This amendment, however, is not implicated here as AIG seeks reimbursement only from petitioner's third-party recovery as expressly allowed by Section 40.

[7] See Acikgoz v. N.J. Tpk. Auth., 398 N.J. Super. 79, 88-89 (App. Div. 2008) (explaining that under the premises rule an employee must show that the employer had control of the property on which the accident occurred in order to demonstrate that the accident occurred in the course of employment).

because the injury was noncompensable and AIG's liability therefore nonexistent.  Accordingly, AIG is entitled to recover from petitioner's third-party settlement all of its payments to her, less her expenses of suit and attorney's fee in accordance with Section 40.

Our conclusion that Section 40 applies regardless of a claim's compensability furthers the Act's remedial purpose of "mak[ing] benefits readily and broadly available to injured workers through a non-complicated process."  Tlumac v. High Bridge Stone, 187 N.J. 567, 573 (2006).  Allowing third-party reimbursement under Section 40 without regard to compensability encourages the employer to make prompt voluntary payments, thereby affording the employee needed funds for medical treatment and the replacement of lost wages.  The Act encourages the same result through the express assurance of Section 15 that the voluntary payment of benefits will not constitute an admission of liability, as well as through N.J.S.A. 34:15-64c, the Act's attorney fee provision, which allows an employer to reduce its exposure to payment of the petitioner's fees by making a timely good faith tender of compensation.  Menichetti v. Palermo Supply Co., 396 N.J. Super. 118, 123-24 (App. Div. 2007) (noting that the purpose of the Act's fee provision is to encourage the employer to offer a settlement and start paying

the employee at an early date).  Other courts have similarly permitted third-party reimbursement for voluntary payments without a compensability determination to further the policy of encouraging employers to make prompt payments to injured workers.  See Struhs v. Prot. Techs., Inc., 992 P.2d 164, 167-68 (Idaho 1999) (subrogation permitted pursuant to statute even though benefits had been voluntarily paid rather than the subject of a formal award); see also Olson v. Blesener, 633 N.W.2d 544, 546-47 (Minn. Ct. App. 2001) (employer who voluntarily paid key employee lost wages could seek reimbursement from third-party recovery through subrogation, albeit not by statute, because employee was never required to be covered by workers' compensation).

In addition, permitting AIG a lien against petitioner's settlement with a third-party tortfeasor pursuant to Section 40, even though her injury was ultimately noncompensable, furthers the legislative policy of integrating the sources of recovery so as to prevent double recoveries.  Midland Ins. Co. v. Colatrella, 102 N.J. 612, 618 (1986).  Our Supreme Court has broadly construed Section 40 by holding that "any proceeds" whether recovered directly from the third-party tortfeasor or from a functionally equivalent source, such as uninsured motorist insurance or legal malpractice proceeds, are subject to

Section 40 liens, and that the same "no double recovery rule" applies to both types of recoveries, even when the employee is not fully compensated.  Frazier v. N.J. Mfrs. Ins. Co., 142 N.J. 590, 602 (1995) (explaining that Section 40 prevents "double recovery," which "occurs when the employee keeps any workers' compensation benefits that have been matched by recovery against the liable third person, even if the two combined would leave the employee less than fully compensated").  Likewise, we have held that where multiple sources of recovery present themselves, workers' compensation benefits, personal injury protection benefits, and recovery from the tortfeasor, the interplay of the controlling statutes reflects a legislative intention to assure but a single recovery to the injured worker.  Lefkin v. Venturini, 229 N.J. Super. 1, 8-9 (App. Div. 1988).

Petitioner and the workers' compensation judge suggest that petitioner has been penalized by AIG's payment of benefits under Section 15, as she would otherwise have had her medical expenses paid by her health insurer.[8]  But that ignores the effect of the

---

[8] We reject petitioner's contention that AIG's voluntary payment of benefits under the circumstances of this case implicates the Sheffield Doctrine, Sheffield v. Schering Plough Corp., 146 N.J. 442, 460 (1996) (holding that "when an employer undertakes to advise an injured employee to apply for certain disability or medical benefits that are authorized by the employer, the employer necessarily assumes a further obligation not to divert the employee from the remedies available under the Act").

(continued)

collateral source rule, N.J.S.A. 2A:15-97.  Under our collateral source rule, petitioner would have been obliged to disclose to the court any amounts she received from her health insurer and they would have been deducted from any tort judgment.[9]  Perreira v. Rediger, 169 N.J. 399, 409 (2001).  Accordingly, had petitioner's health insurer paid her medical expenses instead of AIG, the benefit would have accrued to the third-party tortfeasor, not to petitioner.  Id. at 410-414 (explaining that the two-fold purpose of N.J.S.A. 2A:15-97 was to eliminate the double recovery to plaintiffs that flowed from operation of the common-law rule and to allocate the benefit of that change to liability carriers, thus leaving health insurers in the same position as they were at common law with no right of equitable subrogation).

---

(continued)
Sheffield was directed at an employer's efforts to divert an employee from availing herself of the benefits of the Act. Here, AIG promptly made benefits available to petitioner. Moreover, petitioner filed her claim petition through counsel after AIG initially denied the claim, reversed course and began to voluntarily pay benefits, and after the subrogation agent for AIG's workers' compensation carrier wrote to petitioner asserting a lien against any financial recovery she might obtain from any third party.  These circumstances and the lack of any prejudice to petitioner from the ordinary operation of Section 40 render Sheffield inapplicable here.

[9] That petitioner settled her claim does not change the calculus. See Lefkin, supra, 229 N.J. Super. at 5, 8-9.

Thus, we perceive no disadvantage to petitioner in allowing a Section 40 lien against her third-party recovery regardless of the compensability of her claim.  Because our collateral source rule, N.J.S.A. 2A:15-97, expressly excludes workers' compensation benefits, however, not allowing a lien in this circumstance would undoubtedly result in a double recovery to petitioner, a result certainly not intended by the Legislature under Section 40 or the collateral source rule.  See Frazier v. New Jersey Mfrs. Ins., 276 N.J. Super. 84, 90 (App. Div. 1994) (noting that because the Legislature specifically protected the funds necessary to satisfy a Section 40 lien by excepting workers' compensation benefits from the ambit of the collateral source rule, if repayment of the workers' compensation carrier from the third-party recovery were not required, the workers' compensation exclusion would result in a double recovery to the plaintiff in contravention of clear legislative policy against duplication of awards), aff'd, 142 N.J. 590 (1995).

Read in conjunction, Section 40 and our collateral source statute plainly require that a third-party tortfeasor be held to the full extent of its liability for a workplace injury, that the employer or compensation carrier be repaid for benefits paid to the injured worker pursuant to the Act without regard to the

A-6278-11T4

compensability of the claim, and that the employee not obtain a double recovery.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-6278-11T4