NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3915-16T2

PAOLO MARANO,

    Plaintiff-Appellant,

v.

CLIFFORD J. SCHOB, M.D., and
COMPREHENSIVE ORTHOPEDICS, PA,

    Defendants.

_____

APPROVED FOR PUBLICATION

June 20, 2018

APPELLATE DIVISION

Argued June 4, 2018 — Decided June 20, 2018

Before Judges Sabatino, Ostrer and Firko.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Docket No. L-6604-12.

E. Drew Britcher argued the cause for appellant (Britcher Leone, LLC, attorneys; E. Drew Britcher, of counsel and on the brief; Daniel F. Nicholas, on the brief).

Christopher J. Carlson argued the cause for respondent PMA Companies (Capehart & Scatchard, PA, attorneys; Christopher J. Carlson, of counsel and on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In <u>Pool v. Morristown Memorial Hospital</u>, 400 N.J. Super. 572, 577 (App. Div. 2008), we held that a workers' compensation lien under N.J.S.A. 34:15-40 attached to funds that an injured

plaintiff received from a defendant physician in a medical malpractice case pursuant to the terms of a "high/low" agreement. We ruled that the money paid to plaintiff as the negotiated "low" figure in accordance with the agreement was subject to the statutory lien, even though a jury had rendered a "no cause" verdict in favor of the physician and absolved him of liability. Id. at 575-77.

Similarly, in the present case, despite a "no cause" decision, an injured plaintiff recovered the "low" amount under a high/low agreement he entered into with defendants who provided medical treatment to him after a work-related accident. Relying upon Pool, his employer's workers' compensation carrier seeks to enforce its lien for compensation benefits it paid to plaintiff. Plaintiff argues that N.J.A.C. 11:1-7.3(a)(1), a regulation adopted by the Department of Banking and Insurance exempting certain payments made under a high/low agreement from physician reporting requirements, alters the analysis in Pool. Plaintiff claims the regulation renders the compensation lien unenforceable in this setting.

For the reasons that follow, we reject plaintiff's novel argument. We concur with the trial court that the regulation does not affect the validity and enforceability of the carrier's Section 40 lien, and that the lien applies to the proceeds

collected by plaintiff from the medical malpractice defendants. We also reject plaintiff's alternative request that we repudiate our decision in <u>Pool</u>. However, we remand this matter to the trial court for the limited purpose of reconsidering a disputed portion of the overall lien amount.

## I.

The relevant facts and procedural history are essentially undisputed. Plaintiff Paolo Marano was a police officer employed by the Union Township Police Department. On July 12, 2010, he sustained injuries to his back in a work-related incident.

Plaintiff sought treatment from an orthopedic surgeon, Clifford J. Schob, M.D., at Comprehensive Orthopedics, PA ("Comprehensive"). According to plaintiff's unproven allegations in the medical malpractice case, Dr. Schob did not properly diagnose his condition and negligently failed to advise him to visit the emergency room.

Plaintiff underwent extensive medical and rehabilitative treatment for his injuries. Because the injuries were work-related, plaintiff received workers' compensation benefits from respondent PMA Companies ("PMA"), the third-party administrator for Union Township. The amount of compensation benefits paid by PMA from August 1, 2013 through March 29, 2016 totaled

$51,779.81. That total included $5,403.07, which are characterized as "case management" and non-treatment charges.

In September 2012, plaintiff filed a complaint in the Law Division, alleging medical negligence on the part of defendants Dr. Schob and Comprehensive. After defendants filed an answer denying liability, the parties entered into a high/low agreement. In connection with their agreement, the parties elected to have the medical malpractice claims resolved through binding arbitration. They agreed that, following the arbitrator's decision, plaintiff would receive from defendants at least $250,000 (the "low") and no greater than $750,000 (the "high").

The parties arbitrated the medical malpractice case before a retired judge over two days in January 2016. In a letter decision, the arbitrator found no cause of action and dismissed the claims against defendants. Pursuant to the high/low agreement, defendants (or their insurers) paid the low figure, i.e., $250,000, in resolution of the claims. Out of that sum, $88,000 was disbursed to plaintiff; $57,148.33 was paid to plaintiff's counsel as reimbursement for expenses; and $62,851.67 was paid to plaintiff's counsel as an attorney's fee. In addition, by agreement of the parties, $42,000 was kept in trust, with plaintiff's acknowledgment that the funds would not

be disbursed until the issues regarding PMA's workers' compensation lien were resolved. According to PMA, the amount of its lien is approximately two-thirds of $51,779.81.

Plaintiff asserted that the workers' compensation lien had been extinguished as a result of the "no cause" outcome of the arbitration. PMA disagreed, asserting the $250,000 that defendants paid to plaintiff constituted an improper "double recovery" unless the lien was satisfied.

In November 2016, PMA moved before the Division of Workers' Compensation to enforce the Section 40 lien. Several weeks later, plaintiff filed an order to show cause and a verified complaint in the Law Division, seeking a declaration that the payment made to him pursuant to the high/low agreement was not subject to PMA's lien. Although PMA was not a defendant named in the verified complaint, it became aware of plaintiff's application and filed opposition to the order to show cause.[1]

In January 2017, a hearing scheduled in the workers' compensation court on PMA's motion in that forum was adjourned. A few days later, Judge L. Grace Spencer, heard oral argument on

[1] Given the rapid sequence of events, it appears that PMA did not file a motion to intervene in the Law Division case, but the trial court nevertheless heard PMA's arguments. Plaintiff acknowledges the lack of a formal motion by PMA to intervene in the Law Division is not an impediment to our consideration of the substantive issues posed on this appeal and PMA's participation in the appeal as a respondent.

plaintiff's order to show cause and PMA's opposition. Defendants in the medical malpractice case, having paid their stipulated sum under the high/low agreement, did not participate.

On March 6, 2017, Judge Spencer denied plaintiff's application, issuing a detailed written statement of reasons. The judge noted that a key purpose of the lien statute, N.J.S.A. 34:15-40(b), is to prevent double recovery by injured workers. Citing our opinion in Pool, 400 N.J. Super. at 572, the judge ruled that payments made pursuant to high/low agreements were to be treated as settlements under the lien statute and were thus subject to such liens.

The judge specifically rejected plaintiff's argument that the change in physician reporting requirements, as set forth in N.J.A.C. 11:1-7.3(a)(1), eliminated the enforceability of PMA's lien in this high/low context. The judge instead found that PMA's lien must be satisfied. The judge also ruled that the workers' compensation court should make the determination of which fees were associated with medical expenses and whether they were lienable under Section 40.

Plaintiff's present appeal followed. He argues that, as a matter of law, the changes in the physician reporting regulation require the payment that he received as the "low" figure under

the high/low agreement to be exempted from PMA's lien. In the alternative, plaintiff respectfully contends that Pool was wrongly decided and should be reconsidered by this panel. Lastly, plaintiff asserts that, if we do find the lien to be enforceable, the matter should be remanded to the Law Division to reduce the lien amount by a disputed portion of the charges.

PMA counters that we should affirm the trial court's decision and reasoning, which are legally sound. As a separate jurisdictional point, it contends that the question of the enforceability of the lien should have been decided by the compensation court, rather than by the Law Division. PMA also disputes whether any reduction of the lien is warranted.[2]

## II.

Generally, under the workers' compensation statutory scheme, when a third party is liable to an employee or his dependents for an injury or death, the employee or his dependents can take action against the third party. N.J.S.A. 34:15-40. If the employee or his dependents are successful in obtaining recovery from such a third party, then the employer has a statutory right to a portion of that recovery. This right is provided in N.J.S.A. 34:15-40, in pertinent part, as follows:

---

[2] At oral argument on the appeal, both counsel expressed optimism that the reduction issue is likely to be resolved amicably.

> If <u>the sum recovered by the employee</u> or his dependents from the third person or his insurance carrier is equivalent to or greater than liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability <u>and shall be entitled to be reimbursed</u>, as hereinafter provided, <u>for the medical expenses incurred and compensation payments theretofore paid</u> to the injured employee or his dependents <u>less employee's expenses of suit and attorney's fee</u> as hereinafter defined.

> [N.J.S.A. 34:15-40(b) (emphasis added).]

The general intent of the statute is to prevent double recovery and to preclude an injured employee from "recovering and retaining workers' compensation payments, while at the same time recovering and retaining the full damages resulting from a third-party tort suit." <u>Greene v. AIG Cas. Co.</u>, 433 N.J. Super. 59, 64 (App. Div. 2013). <u>See also</u> <u>Frazier v. N.J. Mfrs. Ins. Co.</u>, 142 N.J. 590, 597 (1995) (explaining that "[o]therwise, tort recovery would be duplicating the workers' compensation benefits").

A settlement obtained by an injured employee from a third party qualifies under Section 40 as a reimbursable recovery to the employer or workers' compensation carrier. <u>See, e.g.</u>, <u>Frazier</u>, 142 N.J. at 595-602 (finding that a settlement for legal malpractice was subject to a lien to reimburse workers' compensation payments). "Section 40 [is] not to be so rigidly

confined and [is] to apply to recoveries that were the functional equivalent of a recovery from the actual third-party tortfeasor." Id. at 598.

In Pool, 400 N.J. Super. at 577, we held that the right of recovery of a compensation lien under N.J.S.A. 34:15-40 encompassed payments paid to injured workers pursuant to the terms of high/low agreements. We noted that high/low agreements fundamentally are a type of a settlement, because they are offered and accepted as a means of resolving the parties' differences. Ibid. "The general language of N.J.S.A. 34:15-40 clearly evinces the Legislature's intent to broadly expand the type of payments to which the lien will attach." Id. at 576. "No matter how atypical or novel the nature of a settlement agreement, the lien will attach to a payment received by an injured employee that is derivative of the employee's demand, claim or suit against a third[-]party tortfeasor." Ibid. "In short, the lien attaches regardless of the merit of the third-party claim." Id. at 577.

Plaintiff contends that our analysis in Pool is negated, or at least qualified, by the Department of Banking and Insurance's adoption of N.J.A.C. 11:1-7.3(a)(1).

The related statute, N.J.S.A. 17:30D-17, prescribes that an insurer must notify the Medical Practitioner Review Panel "of

A-3915-16T2

any medical malpractice claim settlement, judgment or arbitration award . . . ." N.J.A.C. 11:1-7.3(a), the regulation at issue here, provides:

> (a) Any insurer or insurance association authorized to issue medical malpractice liability insurance in the State shall notify the Medical Practitioner Review Panel in writing of the following:
>
> 1. Any medical malpractice claim settlement, judgment or arbitration award involving any practitioner licensed by the State Board of Medical Examiners and insured by an insurer or insurance association.
>
> i. <u>The notification requirement</u> set forth in (a)1 above <u>shall not apply to payments made under agreements for minimum and maximum payments irrespective of the verdict</u> (commonly referred to as high/low agreements) where there is a finding by an arbitrator or a verdict in a civil action of no liability on the part of the practitioner . . . .
>
> [N.J.A.C. 11:1-7.3(a) (emphasis added).]

The portion of the present regulation excluding certain payments made pursuant to high/low agreements from reporting to the Review Panel was added in 2009 after <u>Pool</u> was decided. <u>See</u> 41 N.J.R. 3302(a). The high/low agreement exclusion was proposed because "[w]here there is a finding or verdict of <u>no liability</u> on the part of the practitioner, the reporting of payments made in accordance with a 'high/low agreement' . . . could be <u>misleading,</u> in that it would indicate that the

A-3915-16T2

practitioner had committed malpractice when, in fact, no finding had been made in a legal proceeding to that effect." 41 N.J.R. 1650(a) (emphasis added). However, claims payments are still reported to the Department, which monitors the medical malpractice liability insurance market, because no identifying information is included. Ibid.

Neither the rule proposal nor its adoption in the New Jersey Register mention any impact of the regulation upon the ability of an employer or insurer to enforce a workers' compensation lien. 41 N.J.R. 1650(a); 41 N.J.R. 3302(a). In fact, the proposal explicitly noted the amendment would "have little or no economic impact on insurers." 41 N.J.R. 1650(a). Further, typical settlements outside of a high/low context, whether a defendant's liability has been admitted or not, would continue to trigger the reporting requirements.

Plaintiff asserts that certain public policies underlying the adoption of the revised regulation are thwarted by allowing payments of the "low" amount under a high/low agreement to be subject to Section 40 liens. Plaintiff asserts a main reason the regulation was adopted was to incentivize doctors sued for malpractice and their insurers to enter into high/low agreements. Such agreements enable doctors to be free from reporting requirements where no liability on their part is found

but the plaintiff will still receive the "low" stipulated sum to cover litigation expenses and perhaps a modest remainder. Plaintiff posits that fewer high/low agreements will be negotiated if the result in this case is affirmed, because future plaintiffs will have to demand higher "low" figures to take into account lien obligations. In essence, plaintiff wants a lien-free "low." We are unpersuaded by these arguments.

In adopting the regulatory change, the Department was manifestly concerned about not misleading the public about the nature of a "low" payment paid on behalf of a physician under a high/low agreement after a "no-cause" at trial or arbitration. That concern has no relationship to a compensation carrier's rights under Section 40 to impose a lien on the recovery.

Moreover, even if we were to accept plaintiff's premise that fewer high/low agreements will be negotiated if the "low" award is deemed subject to a Section 40 lien, that premise does not negate the strong public policies underlying Section 40, which we recognized in Pool. 400 N.J. Super. at 576-77. The ability of the employer or insurer to apply a Section 40 lien on recovery does not depend on whether the settlement involves the alleged tortfeasor admitting liability.

As we have already noted, and continue to stress here, the rationale for the statutory right to a compensation lien is

12                                                    A-3915-16T2

centered upon the public policy preventing double recovery. See e.g., Frazier, 142 N.J. at 597. None of the reported cases interpreting and applying the statute take into account the actual liability of the alleged tortfeasor. Therefore, whether an alleged tortfeasor is ultimately held to be liable does not affect the enforceability of a lien. Pool therefore remains good law, unaffected by the subsequent regulation.

We therefore affirm the trial court's ruling concerning the enforceability of the lien, and reaffirm our opinion in Pool. We do remand the matter to the Law Division[3] to address the limited issue concerning the disputed portion of the lien. See Aetna Life & Cas. v. Estate of Engard, 218 N.J. Super. 239, 245 (Law Div. 1986) (finding that the Superior Court has jurisdiction to decide the extent of Section 40 liens).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] Both counsel agreed at oral argument before us that we can presume the trial court has concurrent jurisdiction to resolve the lien calculation dispute on remand. See Estate of Kotsovska v. Liebman, 221 N.J. 568, 587-88 (2015).