229 N.J. Super. 1 (1988)
550 A.2d 985
MARTIN LEFKIN AND FLORENCE LEFKIN, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
ARDUINO VENTURINI, AND DEBORAH DALY, DEFENDANTS, AND AETNA INSURANCE COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 4, 1988.
Decided November 14, 1988.
*4 Before Judges PRESSLER, SCALERA and STERN.
L. Steven Pessin argued the cause for appellants.
*5 Nicholas Caruso argued the cause for respondent (Kenneth J. Fost, attorney; Nicholas Caruso, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Martin Lefkin appeals from a judgment dismissing his complaint against defendant Aetna Insurance Company by which he sought to recover personal injury protection (PIP) benefits under the policy of automobile liability insurance issued to him by Aetna and in effect at the time of his injury. The appeal raises important questions involving the relationship between workers' compensation benefits and PIP benefits and particularly income continuation benefits.
The record before us is regrettably meager and this for the reason that the parties submitted their dispute to the trial judge by way of a truncated stipulation of facts which omits many of the relevant circumstances. This is what we are able to glean from the record. On June 24, 1985, plaintiff, a New Jersey resident, was driving his automobile on a New York highway when he was struck in the rear by a vehicle owned and operated by defendant Arduino Venturini. He sustained a second impact when Venturini's vehicle was struck in the rear by defendant Deborah Daly. He suffered permanent injuries as a result of which he has not been able to work since the accident. His Aetna policy, pursuant to the option exercised by him in accordance with N.J.S.A. 39:6A-10, provided for weekly income continuation benefits of $400, subject to a $41,000 ceiling. To date, and for the reasons hereafter explained, Aetna has made no payments of any PIP benefits to plaintiff.
Plaintiff and his wife, Florence Lefkin, who sued per quod, instituted this action in October 1986 against the two defendant drivers and Aetna. The PIP claims made therein against Aetna were severed, and ultimately, the negligence counts against Venturini and Daly were settled. At some unspecified time following the accident and in an unspecified jurisdiction, plaintiff *6 instituted a workers' compensation action against his alleged employer, Sky Courier Network, claiming that the accident occurred during the course of his employment by it as a messenger. The record does not reveal if Sky Courier contested the action, what the proofs were as to any of the issues therein, or the findings of fact made respecting either plaintiff's employee status or his income. No document whatsoever memorializing any part of that workers' compensation proceeding is included in this record. We have neither the claim petition, the judgment nor indeed anything else. All we know, and this from the stipulation of facts, is that as of November 6, 1987, Sky Courier's compensation carrier, Liberty Mutual Insurance Company, had paid plaintiff the total sum of $20,291.76 in weekly disability benefits and $5,340.48 on account of medical bills and that weekly benefits in the amount of about $83 continue to be paid. Apparently therefore there was an adjudication by a compensation court of plaintiff's employee status, and Aetna, at oral argument before us, so conceded.
Under the further terms of the factual stipulation, both parties agreed that plaintiff was an employee of Sky Courier at the time of the accident and that plaintiff's income for 1984 and that portion of 1985 which preceded the accident was "as reflected" in his federal income tax returns annexed to the stipulation. Those returns both contained a Schedule C, indicating that plaintiff was self-employed in the business activity of "courier." For the year 1984, gross receipts of $21,166 were reported. We do not know for certain if that entire amount was paid to him by Sky Courier but that may well be so. From this gross figure, the sum of $16,811 was deducted as business expenses, almost all of which was attributed to "car and truck" expenses, including over $6,500 in automobile depreciation. There was also a deduction taken for partial use of a residence for business purposes. Net profit of $4,355 was reported. The 1985 return, covering a calendar year in which plaintiff worked only six months, is generally consistent with the 1984 return. *7 In addition, each of these returns included a computation of plaintiff's social security self-employment tax.
Finally, the stipulation of facts described the issues in dispute between the parties as follows:
A. Whether the plaintiff is entitled to wage continuation benefits over and above any benefits received from Liberty Mutual.
B. Whether this defendant is obligated to satisfy Liberty Mutual's lien with regard to medical payments.
C. Whether plaintiff's counsel is entitled to a counsel fee on the plaintiff's claim against this defendant.
Plaintiff moved for judgment, and the court concluded that he was entitled to no relief. Final judgment was accordingly entered dismissing the complaint.
We consider first the issue respecting medical expenses. Plaintiff argues that because of the interplay between the workers' compensation law and the PIP law, he has been obliged, despite the third-party recovery from defendants Venturini and Daly, to absorb his own medical expenses without reimbursement by either the compensation carrier, the PIP carrier, or the tortfeasors. As we understand this argument, it is initially premised on N.J.S.A. 39:6A-6, which relieves the PIP carrier from the obligation of making payments for expenses incurred by the insured which are covered by workers' compensation benefits. Aetna has thus made no medical expense payment to plaintiff under his PIP coverage because these expenses were paid by Liberty Mutual, Sky Courier's workers' compensation carrier. Plaintiff next points out that N.J.S.A. 34:15-40 imposes a lien in the employer's favor on the proceeds of the recovery from the third-party tortfeasor in the amount of compensation benefits paid to the plaintiff-employee.[1] He asserts *8 that because of this provision, the proceeds of his settlement with Venturini and Daly are effectively reduced by the medical benefits which were paid to him by his employer's compensation carrier since he is required by that statute to reimburse the compensation carrier in that amount.[2] Finally, plaintiff contends that the third-party recovery could not have included his medical expenses because they were incurred as the result of an automobile accident, thereby invoking the prohibition of N.J.S.A. 39:6A-12, which bars evidence in the third-party action of medical expenses within PIP coverage. The conclusion he thus draws is that since he was not consequently able to recover his medical expenses either from his PIP carrier or the tortfeasors, he must, in effect, reimburse the compensation carrier out of his own funds, recovering medical expenses from no one. Upon this construct, he urges that the PIP carrier, not he, should pay the medical expense portion of the compensation lien. The argument is obviously flawed.
In the circumstances here, three potential sources of reimbursement of his medical expenses were available to plaintiff: workers' compensation benefits, PIP benefits, and recovery from the tortfeasor. It is, moreover, clear that the overall legislative intention is ultimately to assure a plaintiff-insured-worker such reimbursement, but only by way of a single recovery. Where only two potential payment sources are implicated, the controlling statute plainly dictates which of the two is primary. Thus, where both workers' compensation benefits and proceeds of a tort action have been recovered, the tort recovery is primary. This accords with the purpose of N.J.S.A. 34:15-40, which is to implement the employer's right to subrogation against the tortfeasor responsible for its payment obligation *9 to its employee. See, e.g., Schweizer v. Elox Div. of Colt Industries, 70 N.J. 280 (1976); United States Casualty Co. v. Hercules Powder Co., 4 N.J. 157 (1950). Where only workers' compensation benefits and PIP benefits are available, the primary burden is placed on workers' compensation as a matter of legislative policy by way of the collateral source rule of N.J.S.A. 39:6A-6. See, generally, Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550 (1981). And when only PIP benefits and tortfeasor liability are involved, the primary burden is placed as a matter of policy on the PIP carrier by N.J.S.A. 39:6A-12. See, e.g., Cirelli v. The Ohio Casualty Insurance Co., 72 N.J. 380, 386 (1977).
The conceptual error plaintiff makes is his assumption that if all three potential payment sources conjoin, the injured party recovers his medical expenses from none of them. The assumption is erroneous because in those circumstances there is no bar against recovery of the medical expenses collected or collectible in workers' compensation from the tortfeasor. This is so because PIP benefits are not available to an insured if workers' compensation benefits are also available to him. Consequently, PIP benefits in that situation are neither collectible nor paid. Hence, N.J.S.A. 39:6A-12, which bars evidence in the third-party action only of "amounts collectible or paid" under PIP coverage, is inapplicable, and there is no other impediment to the plaintiff-insured-employee recovering his medical expenses from the tortfeasor even though that recovery will ultimately be subject to the compensation lien. See Bernick v. Aetna Life and Casualty, 158 N.J. Super. 574 (Cty.Ct. 1978), in which Judge Mackenzie reached the same conclusions as we on a substantially similar analysis. Accordingly, we affirm the judgment below to the extent it denied plaintiff's claim against defendant Aetna for medical expenses.
Plaintiff's claim for income continuation benefits presents more difficult problems. The trial court's rejection of plaintiff's claim was predicated on its determination, based on *10 plaintiff's federal income tax return alone, that plaintiff, despite the contrary determination of a workers' compensation court of competent jurisdiction and despite the stipulation of the parties to this action, was not an employee of Sky Courier at all but rather a self-employed person. The trial court concluded further that plaintiff was not only bound by his income tax return in respect of determining his employment status but that he was also so bound in respect of determining his income for PIP purposes, which the court then equated with the net profit shown on his Schedule C. Since that net profit yielded a weekly income no greater than his workers' compensation benefits, the court concluded that plaintiff had sustained no loss of income compensable by PIP. We disagree with the court's reasoning. We are satisfied that the determination by a workers' compensation court of a petitioner's employment status is binding on the PIP carrier. Indeed, we assume that Aetna had stipulated to plaintiff's employee status in this action in recognition of that proposition.
We note at the outset that contrary to the view of the trial judge, we perceive no fundamental inconsistency between one's classification as an employee for workers' compensation purposes and as a self-employed person for federal income tax purposes. Patently, the workers' compensation laws and the federal income tax laws implement entirely different statutory purposes and policies and are governed by wholly distinct definitional standards.
In his dissenting opinion in Marcus v. Eastern Agricultural Ass'n, Inc., 58 N.J. Super. 584, 596 (App.Div. 1959), on which the Supreme Court reversed the majority's judgment, 32 N.J. 460 (1960), Judge Conford explained that the purpose of workers' compensation legislation is not only to provide a prompt monetary remedy for workers injured in the course of their employment but also to do so by a system in which the cost of industrial accidents is borne by the consumer as part of the cost of the product or service. Hence, he concluded

*11 ... any workers whose services form a regular and continuing part of the cost of that product, and whose method of operation is not such an independent business that it forms in itself a separate route through which his own costs of industrial accident can be channelled, is within the area of intended protection. [Id. at 603, quoting Larson, Workmen's Compensation Law (1952), § 43.51, p. 632.]
See also Livingstone v. Abraham & Straus, Inc., 111 N.J. 89, 94-95 (1988).
In determining whether a worker is an employee or independent contractor for workers' compensation purposes, Judge Conford therefore prescribed an economic and functional test in which "the determinative criteria [are] not the inconclusive details of the arrangement between the parties, but rather the extent of the economic dependence of the worker upon the business he serves and the relationship of the nature of his work to the operation of that business." 58 N.J. Super. at 603. Among the specifically rejected "inconclusive details of the arrangement between the parties" in Marcus was that of payroll deductions. The employer there took none, and the employee paid tax as a self-employed person. The court thus recognized that it is for the parties to determine by their agreement how compensation will be paid by the employer to the employee for accounting and bookkeeping purposes and that that determination imposes upon each a specific set of tax obligations, advantages, and disadvantages. But these tax consequences do not themselves serve to characterize or define the relationship for all other purposes, and this proposition has long been accepted by our courts. See, e.g., Congleton v. Pura-Tex Stone Corp., 53 N.J. Super. 282, 290-291 (App.Div. 1958); Tofani v. LoBiondo Brothers Motor Express, Inc., 83 N.J. Super. 480, 493-494 (App.Div. 1964); Smith v. E.T.L. Enterprises, 155 N.J. Super. 343, 351 (App.Div. 1978). Obviously then, the fact that plaintiff filed income tax returns presumably consistent with the compensation arrangements he had with Sky Courier, that is, as an independent contractor, was not inconsistent with the adjudication by the workers' compensation court of his employee status. A fortiori that fact alone *12 provided no justification for the trial judge's rejection of that adjudication.
Beyond that, we are satisfied that the workers' compensation adjudication was binding on defendant as the PIP carrier and hence not susceptible to rejection by the trial judge at all. We so conclude on the basis of the policy and provision of both the PIP statute and the workers' compensation laws. As we have pointed out, N.J.S.A. 39:6A-6 places the primary obligation for the payment of benefits covered both by workers compensation and PIP on the employer rather than the PIP carrier. This policy decision may be presumed to have been based on the legislative perception that in terms of societal distribution of the burden of loss resulting from automobile-accident injury, the primary cost of work-related injuries should continue to be borne by the ultimate consumers of the goods and services in whose production they are incurred. Thus, the automobile-owning public, whose insurance rates are proportionally related to the PIP claims experience of the insurance industry, is relieved of that portion of the overall burden. This policy decision is clearly implemented by according the workers' compensation court the essential responsibility for determining employee status for PIP purposes just as it has exclusive jurisdiction for determining it for workers' compensation purposes. N.J.S.A. 34:15-49. Not only is that forum best equipped to do so by its accumulated and collective expertise but, moreover, its statutory mandate requires it liberally to construe and apply the workers' compensation laws so that they will serve their beneficent social purposes. See, e.g., Panzino v. Continental Can Co., 71 N.J. 298, 303 (1976). Consequently, it is within the workers' compensation system and for workers' compensation purposes that the scope of employee classification receives its most permissibly expansive interpretation. And that expansive interpretation, which will embrace the greatest possible number of work-related automobile accidents within the workers' compensation system, serves not only the statutory PIP policy but also the immediate financial interest of the PIP carriers, and *13 ultimately, the financial interest of the automobile-owning public.
For these reasons, there is an identity of interest between the PIP carrier and its insured who files a workers' compensation petition since, obviously, the insured's success will relieve the PIP carrier of substantial payment obligations. Moreover, that mutuality of interest, because it ultimately derives from the subrogation principles implicit in N.J.S.A. 39:6A-6, has been recognized as according the PIP carrier the derivative right to seek reimbursement from the employer in the workers' compensation court of benefit payments which are primarily the employer's responsibility under the workers' compensation system. This it may do by intervening in a pending workers' compensation action or by the filing of its own claim petition if its insured fails to do so. See Olivero by Olivero v. New Jersey Mfrs. Ins. Co., 199 N.J. Super. 191 (App.Div. 1985); Aetna Cas. & Sur. Co. v. Para Mfg. Co., 176 N.J. Super. 532, 535 (App.Div. 1980); Solimano v. Consolidated Mutual Ins. Co., 146 N.J. Super. 393 (Law Div. 1977). The significant point is that these rights of the PIP carrier vis-a-vis its insured's employer are appropriately rights within the exclusive jurisdiction of the workers' compensation court. See Olivero by Olivero, supra, 199 N.J. Super. at 200.
The deference which the trial court therefore owes the adjudication of the workers' compensation court in circumstances such as those here is not merely a jurisdictional matter but is based on principles of estoppel against the PIP carrier as well. Certainly equitable estoppel must here bar the PIP carrier from challenging the workers' compensation adjudication of plaintiff's employment status. It has already received the benefit of that adjudication and clearly could not repudiate it without itself having to bear the ultimate burden of all the medical expense and income continuation benefits which plaintiff has already received from his employer's compensation carrier. We are also satisfied that collateral estoppel applies as well since *14 even though the PIP carrier was not a party to the compensation proceeding, see Wunschel v. City of Jersey City, 96 N.J. 651 (1984), it had not only a right to intervene therein but, more importantly, it had an identity of interest with the insured in the factual adjudication which benefited both of them. To that extent, its interest in the issue of employee status was successfully represented in the workers' compensation court by its own insured. Compare R. 4:26-3 (virtual representation of future interest).
Having concluded that for purposes of PIP coverage plaintiff must be regarded as an employee of Sky Courier, we deal next with the question of determining what his income was at the time of the accident in order to determine the extent to which, if at all, it exceeded his workers' compensation benefits. It is first clear that the scheme of the PIP law is to reimburse the insured, within his policy limits, for his actual loss of income resulting from the injuries he sustained in the automobile accident. See, generally, Gambino v. Royal Globe Ins. Co., 86 N.J. 100 (1981). And see Zoller v. Transamerica Ins. Co., 215 N.J. Super. 552, 559 (App.Div. 1987), certif. den. 108 N.J. 214 (1987); Zyck v. Hartford Insurance Group, 150 N.J. Super. 431, 435 (App.Div. 1977), certif den. 75 N.J. 521 (1977). To this end, N.J.S.A. 39:6A-4(b) was amended in 1983 by L. 1983, c. 362, § 7, expressly to limit basic income continuation benefits to an amount not exceeding the insured's net income for the period being compensated for. N.J.S.A. 39:6A-10, making the option for greater income continuation benefits available to an insured, was not then expressly so amended. We have no doubt, however, that the same "net income" limitation applies. That limitation is not only consistent with the underlying reimbursement policy of the act but was also specifically alluded to in the legislative statement accompanying the Assembly Bill 1853, enacted 95 L. 1981, c. 533, by which N.J.S.A. 39:6A-10 was substantially amended. Predating the 1983 amendment of N.J.S.A. 39:6A-4, that statement, referring to *15 the enhanced income continuation benefits afforded by N.J.S.A. 39:6A-10, explained that
The amendments [of N.J.S.A. 39:6A-10] provide that no income continuation benefits could be collected in excess of the net income normally received during the period in which the benefits are payable. This provision is intended to discourage the over-utilization of benefits. [Emphasis added.]
While "net income" itself is not defined in this legislation, it is evident that it is intended to refer to the actual amount of money which an income-producing insured has lost by reason of his injury. Ordinarily, that sum would be his actual earnings after tax and other such mandated payroll deductions.
The question then is what "net income" means in the context of an employee whose compensation arrangements with his employer treat him as an independent contractor for accounting, bookkeeping, and tax purposes.[3] As in the case of the definition of "employment" itself, we are confident that "net income" has different meanings for different purposes and in different contexts. We are also confident that for an employee such as plaintiff, net income by any definition relevant to PIP benefits cannot necessarily be equated with the net profit line on Schedule C of the federal income tax return. We have no intention of delving into distinctions between permissible avoidance of federal tax and impermissible evasion of federal tax. Nor do we consider whether or not there is any impropriety in an employer's method of compensating his employee which makes no payroll deductions. Nor is such an employee's consequent tax reporting a matter of concern here, although it may eventually be a matter of concern in his relationship with the Internal Revenue Service. See, e.g., Langley v. Allstate Ins. Co., 206 N.J. Super. 365 (App.Div. *16 1985). It is sufficient for us to observe again that the federal tax law is based on classifications, definitions, deductions, exclusions, and credits which define the taxpayer's tax obligation. They do not, however, necessarily define his "net income," that is, the number of dollars he has in his pocket at the end of the year after paying his tax and social security obligations and perhaps even after paying his actually incurred cost, not his "paper cost," of doing business. We think it unlikely that this plaintiff's labor only yielded to him actual dollars in the amount of $4,355 for his labor in 1984 on gross receipts from his employer in that year of over $20,000.
In order to determine what plaintiff's effective actual net income was, it is our view that the court should, as in the case of employment status, be guided by the adjudication of the workers' compensation court. That is to say, it is axiomatic that a workers' compensation court awards benefits to a petitioner based on his actual income computed pursuant to law in accordance with petitioner's claimed income and the employers' proofs or stipulations. See, e.g., N.J.S.A. 34:15-37. It would appear then that plaintiff's actual wages from Sky Courier have already been calculated for workers' compensation purposes in a proceeding in which, moreover, the respondent employer and the PIP carrier shared the common interest of a calculation not exceeding actual net income. We therefore conclude that both as a substantive matter and as a matter of convenience and expedition, the income on which plaintiff's compensation benefits have been paid, as fixed by the workers' compensation court, should be presumptive evidence of his net income for PIP purposes as well. Compare Wunschel v. City of Jersey City, supra. Either party would then have the option of adducing direct proofs demonstrating that this sum does not represent the effective actual income loss of the insured. Since no proofs were adduced at all in the trial court respecting either plaintiff's actual net income loss or the relevant adjudication of the workers' compensation court, this issue must now be tried.
*17 The final issue before us is that of counsel fees, available to a successful insured claimant pursuant to R. 4:42-9(a)(6), as interpreted by Maros v. Transamerica Insurance Co., 76 N.J. 572 (1978). The issue must abide the outcome of the trial.
The judgment of the trial court insofar as it denies plaintiff's claim for medical expenses is affirmed. The remaining terms of the judgment are reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
NOTES
[1] While, as we have stated, we do not know if the compensation proceeding here was brought in New York or New Jersey, it is our understanding that the lien on the recovery from third parties is a customary provision of all modern compensation laws. Presumably then, some lien provision applies and is asserted by plaintiff to apply, irrespective of the jurisdiction in which the compensation proceeding was brought.
[2] Plaintiff does not refer to provisions like N.J.S.A. 34:15-40(b) which reduce the amount of the lien by a pro rata share of attorney's fees and expenses of suit incurred in obtaining the third-party recovery. That provision affects the amount of the lien but is not otherwise germane to the legal issue here involved.
[3] We do not deem dispositive here our opinion in Zyck v. Hartford Insurance Group, supra, which attempted to define the net income of a partner. That case involved a separate business entity of a partnership distinct from the individual partner. Here there is not. Moreover, here we deal with an actual employment relationship constructed as an independent contractor relationship presumably for tax and accounting purposes.